My name is Stephen Warner, and I represent Appellant Farm Bureau Property and Casualty Insurance Company. This is, of course, an insurance coverage case. I would submit that analysis of the case can begin and end with two propositions. First, insurance contracts are contracts of indemnity, which means they're designed to compensate an insured for the actual loss they sustain and no more. They're not designed to give insureds windfalls. Second proposition is that the Farm Bureau policy in this case covers accidental direct physical loss. That is both the trigger for coverage for damage to the dwelling and a check on the scope of coverage. Now, the Shaws, as you know, had two fires at their home, a little less than two months apart. The first fire caused a partial loss, which Farm Bureau paid for. The second fire was also a partial loss. Ah, but in your answer, didn't you admit that it caused a total loss? At the risk of getting into semantics, a lot of this case is about semantics. Well, that's kind of an important semantic, isn't it? It is, and I'll agree with you, it is. Paragraph 19 of the complaint specifically alleges that the second fire rendered the property a total loss. And from a chronological perspective, that's true. In combination with the first fire, because the second fire happened after it, the net result of the two losses was that the property was rendered a total loss. What we did not admit in our answer, and which we contend in this case, is that the second fire, like the first fire, was a partial loss. It was the two in combination that culminated in a total loss. Um, and that's why Farm Bureau, after the second loss, paid the remainder of the policy limit that was left over after the payment from the first fire. Well, I'm going to ask a related question, which is, aren't both of these, both fires and the losses they created, accidental direct physical losses? They are to the portions of the property that were in existence or damaged at the time of each loss. Now, where does it say that in that clause? The thing you just added, where does it say that in the clause? Well, I think it says that in the words used for the trigger coverage. The loss must be direct and physical. The second fire, when the second fire happened, only a portion of the building remained standing. Necessarily, then, the loss resulting from the second fire could not have been a total loss. It was a direct physical loss to a portion of the property. I don't see that in the policy. And the way these policies, I've done a fair bit of Minnesota insurance law, and the way these policies are written is you have a coverage clause like this. This tells you what type of accident is covered. And you see that because it says subject to these exclusions at the end. So we figure out, do these two types of losses, are they accidental direct physical losses? And then somewhere else in the policy, they send you to what is covered. What is the payout? What you're relying on is usually just in terms of talking about the scope of coverage. So I'm trying to figure out why this policy requires us to do more than what policies normally require us to do. Well, I don't know that I would necessarily agree with you, Your Honor, that policies normally don't require you to do more. They're pretty diverse. They can be. But in this case, the proposition that Farm Bureau is advancing here is that physical loss means there must be loss to something that is in existence. I mean, it can't mean anything else. And at the time of the second fire, a portion of that building was no longer in existence. It had been damaged, destroyed by the first fire, which means, yes, there was direct physical loss as a result of the second fire. It just could not have constituted a total loss. Let me give you a different hypothetical. Suppose I'm renovating my deck, and I actually just did that this summer. We renovated our deck, and huge fire. We just did the demolition. Deck is partially built unusable. Huge fire. Does the insurance company come in and say, well, the fire didn't cause a direct physical loss to your deck, so we're going to deduct $5,000 or $8,000 or $10,000 from the payout? My answer would be it would depend on the amount of completion of your deck. If you had no deck, there's no physical loss to the deck. If the deck is partially completed, the insurance payment is going to be for the actual amount of the loss, actual cash value of what was there at the time. So if it's partially constructed, you would get paid, I would submit, for the portion of the deck that has been completed at the time of the loss. If the whole thing is done, you get paid for the whole thing, because that is what is physically damaged, the entire deck. Why not? So there's a Texas case, because I think what you're saying is actually encompassed in this Texas case that was cited by the parties, where the policy actually says if you're getting repairs done to your house, even based on a prior insurance policy, we reduce it by the value of those repairs, so that the only time you get the full face value is when the repairs are completely done. That, to me, directly covers this scenario. The language in this policy, however, does not. Why not require that extra language in the policy? Well, the Farm Bureau policy contains a similar clause, which says for property under construction, we pay actual cash value at the time of the loss for the amount of construction that's been done. Right, so why not require that here, too? Well, it would make sense to me to require that here. The district court disagreed with our argument that the property was under construction in the sense that the roof had been partially repaired and things had been done to the property after the first loss. We argued constituted construction. The district court disagreed. I think that's a legitimate position. What a legitimate position to take would be a legitimate outcome here, that the insurance payment for the second loss should be what part of the property existed at the time under at least minimal construction. Let me ask one more follow-up, and I don't mean to monopolize your time. That's fine. My experience with this is when you have damage, whether it be hail damage to your roof or whatever, the insurance company will pester you until you get it done. So you get your check in the mail, and then every month on the month, I got a call when we replaced the roof. Have you gotten your roof done? What's the date? And I think the reason for that is because there's an idea that they're going to potentially, if you're not getting it done fast enough, reduce the amount of the face value of the coverage. And so, again, why not put the onus on the insurer here, given the language of the policy, to do the due diligence and to reduce the face value so that the insured is not paying for coverage that the insured will never receive? Well, I would agree that the onus should be on the insured. And in the typical situation, like a hail damage claim like you're talking about, there's an actual cash value payment, and then replacement costs doesn't get paid unless and until they actually do the repairs within a certain specified period of time. Now, we were in the gray area in this case. Actual cash value had been paid. The insured, for whatever reason, had not started doing their repairs. I would submit that the onus should be on the insured to start the repairs, to get this thing rebuilt. And the reason for that sort of ties into the value policy statute, which basically says, you don't get total stated value if the risk is increased without the consent of the insurer. Well, I would submit to the court that the first loss undeniably increased the risk of a subsequent loss. After the first loss, in addition to the extensive fire damage, there was a big hole in one side of the building. It was exposed to the elements, increased the risk of loss. It was exposed to vandalism, increased the risk of loss. I think it's undeniable. I suggested that the district court could take judicial notice of the fact that the first loss increased the risk. That's the situation I think you're talking about. The first loss does increase the risk, and the failure of the insured to do repairs timely also increases the risk that a second loss will occur. And that, I would submit, is why, in terms of the second fire alone, the value policy statute doesn't even apply. And if the value policy statute doesn't apply, we're back to direct physical loss. What's the amount of damage caused by the direct physical loss resulting from the second fire? Now, the plaintiff has a burden of proving that. The plaintiff hasn't presented any evidence that the loss was any more than the $108,000 that Farm Bureau paid them after the second loss. So here we are. The third point I would make is that, and this is, again, with regard to the value policy statute, the plaintiffs were paid full value for their property. It just so happens that they were paid full value as a result of two losses. There's nothing in the value policy statute that limits its scope to single occurrences. We had two occurrences, each causing a partial loss, both together resulting in a total loss. Farm Bureau paid stated value in combination. They complied with the value policy statute. So the Shaw's have been fully compensated. What they're looking for is a windfall. They're looking for an additional $159,000 beyond stated value under their policy. They shouldn't be entitled to that. And for that reason, we're requesting that this court reverse. Unless there are other questions right now, I'm going to reserve the remainder of my time. Hearing none, very well. Okay. Thank you. Mr. Lloyd. Good morning, Your Honors. I'm Chuck Lloyd, and along with Adam Hagedorn, I represent the Shaw's, the claimants and homeowners in this case. Where I want to start wasn't where I planned to start. Where I want to start is the record before the district court, because Mr. Warner takes some pretty big liberties with the record. There is nothing in this record that shows that the second fire was only a partial destruction of the property, that but for the first fire, it would have not been a total loss. The reality is, is that this was a total loss as they admitted in their answer. And now, when they realize the consequence of that admission, they want to play semantic games with, well, we weren't really talking about the second fire. We were talking about them both together. They presented no evidence to the district court to suggest that the second fire was not in and of itself a total loss. Now, this is not a case involving a windfall. It's a case of involving requiring a party to a contract to abide by the terms of its contract. The Farm Bureau policy contemplates multiple claims within the policy period. The policy specifically provides that the coverages apply to each loss or occurrence that occurs during the policy period, not the totality of them. And they admit that the second fire was a second loss or occurrence, which means there is now a second limit of liability. It's not the same limit that gets applied. And we know that because Farm Bureau knew how to draft a policy to restrict the limitation with respect to the policy period. They did that with the pollution cleanup provision that says, no matter how many occurrences there are, we're only going to pay $25,000. That's it. And they could have done that here, but they didn't. They could have drafted a policy like the Texas policy in the, I think it's Coats versus Farmers Exchange, that said that the limit of liability is reduced by any loss, by the amount of that prior loss, and is then returned as the damages, as the repairs are made, up to the limit of the policy. They could have done that, but they didn't. Instead, what Farm Bureau did in its policy is it provided itself with, A, a right, the right to inspect the property and determine insurability at any time over the course of the policy term. Second, they had the right to cancel coverage or reduce coverage under the terms of the policy. And they admit they did none of those things. Now, they did know the extent of the damage from the first fire. It was a partial loss. Again, they're claiming that part of the home was destroyed. Nothing in the record. The only thing in the record about the first fire are the photos that are in the appendix that show that there's a hole in the roof. That hole was, I believe, after the fire, not as part of the fire, but was done as a way of trying to see the extent of the damage in the roof structure, because it's a uniquely structured house. It's an A-frame, in the truest sense. It's just up and down. And so there was a hole in the roof, but that is, as far as the record goes, that's the full extent of the destruction of the house from the first fire. The record's empty about whether it was smoke damage that caused all of this from a fire that started in the basement of the house, et cetera. So what we have is a record that says there was a partial loss fire, and then there is a subsequent fire that totaled the house. Well, let's make it even a crazier hypothetical. Suppose that one day the house partially burns down. Second day, completely separate, the house completely burns down. The argument would probably be the same, right? That the first, you're entitled, the insured is entitled to benefits for that first fire and the second fire, which, again, would result in the windfall, potential windfall, even though they're receiving no opportunity to repair the damage. What do we do in a situation like that? Well, Your Honor, typically speaking for it to be a separate occurrence or loss, there has to be a distance in time that two fires that occur one day after the next are typically considered. Now, with respect to Your Honor's hypothetical, I'm assuming you're saying they're two totally unrelated. Totally unrelated. There's a kitchen fire. One is oil and the other is, you know, the wiring's no good. Right. That, Your Honor, then the answer to that question is I will say I don't know. It is a, in this policy language, I would say the answer is they owe two different policy limits because of the way they wrote the policy. Now, you know, the Shahs, God love them, had no involvement in the drafting of this insurance policy, as you well know. This was a policy, Farm Bureau chose this language. Farm Bureau determined that they were going to set this up so that there would be separate coverages for separate occurrences and losses, probably because they want to collect multiple deductibles if there's along the way, because that's how this issue usually arises. It's the insured who typically says, oh, no, it's all one claim, because I only want to pay one deductible. And the insurance company says, no, no, no. It's multiple occurrences, so you owe us two, three, four, whatever deductibles. Now, it's an unusual circumstance, as evidenced by the fact that the parties have cited three other cases where this issue has arisen, the case in Kansas, the case in South Carolina, and the case in Mississippi. This doesn't come up very often, but insurance companies who anticipate this coming up, like the Farmers Exchange in Texas, put something in their policy that provides for that scenario, Your Honor. And so if the language from the Texas case were at issue, in your hypothetical, after the first fire, the policy limit would be reduced. But they didn't do that here. And that's not our fault. So tell me about the direct accidental physical loss. It seems to me that that is 90% of the argument here, at least from the other side. And I just want to give you a chance to make your best argument that that doesn't cover the situation. First off, I would agree with at least the tone of your questioning early on, that what that is is a threshold coverage issue. If you don't have direct physical loss, you don't have coverage. It doesn't affect the value of the coverage. It affects coverage, period. No direct physical loss, no coverage at all. But second, it doesn't apply in fire cases. It only applies in the special causes of loss category. Earlier, about two paragraphs above that in the policy, and this is on page 48 of the appendix, the policy says, we ensure your property is described in the declarations for the causes of loss indicated, including all loss or damage from fire and any damage from lightning. And that's perfectly consistent with the Minnesota state fire policy, that requires there be coverage for fire. There's nothing in the Minnesota state fire policy that requires there be direct physical loss. But that, as your Honor pointed out, when the fire occurs, there is direct physical loss to the building. Now, what they're trying to say is that because something happened to the building, it's no longer insured, shouldn't be insured at the level that it was originally insured at, that the policy limit doesn't apply. And there's two provisions that apply here. One of them is the value policy, and that's briefed, and I'll come around to it. But the second provision is in the state fire policy statute, 65A01 subdivision 5, that we point out in our brief, that Farm Bureau is completely silent about, which says, no provision shall be attached or included in such policy, limiting the amount to be paid in case of a total loss on a building by fire, less than the amount of the insurance on same. In other words, they can't put something on the policy. It can't be read to reduce the amount of coverage without actually reducing the amount of coverage. In other words, in this instance, Farm Bureau needed to send something to the SHAS saying, your house is no longer valued at $268,000 or $280,000, whatever the policy limit is. Instead, it's reduced by this amount based on the prior damage. That's what the new value is. We're refunding your premium, et cetera. But the state fire policy or the state statute precludes them from saying, oh, we've got this language in here that says we get to take a reduction in the value. And that goes hand in hand with the value policy statute, which the legislature adopted and which the Supreme Court back in the 50s said, look, insurance companies are busy over-insuring buildings and underpaying claims. And so we're putting the onus on the insurance company, not the policyholder, but the insurance company to make sure that the valuation is proper. And then the insurance company is stuck with that valuation if there is a total loss. You don't get to make ACV payments. You don't get to do any of the kinds of things that they want to do, like they're trying to do here to say, oh, the building really isn't worth what the limit was. Suppose they had said there are two partial losses, so we don't have the stipulation or the admission in the answer. They said we have a partial loss worth $160,000. I don't know the exact numbers, but a partial loss of $110,000. Does that change the outcome in this case, do you think? If there was not, if it truly wasn't a total loss, then you'd be talking about ACV payments. And then there would be the question about whether the second, the actual cash value of the second loss plus then the replacement gets up to the policy limit. But I don't think we would be having this fight at that point because we would have to do the repairs in order to get the hold back from the depreciation. So are you saying this case turns on the admission that the second fire caused a total loss? Everything is triggered by the fact that it was a total loss, yes, Your Honor. Well, the fact or the admission? Because I think the fact, it could arguably be a partial loss because you lost part of it in one fire and the remainder in the second fire. Well, with all due respect, Your Honor, they would have had the burden to come forward with evidence that shows but for the first fire, the second fire wouldn't have resulted in the house ending up in the foundation. What happened here was the fire department was called to a small fire at a propane tank. And they put the fire out, and one of the firefighters happened to be a relative of the Shahs and realized their house was missing. It was completely burned into the foundation and was smoldering. And they had to use a backhoe to pull it out so they could put that part of the fire out. There was no part of the house left standing except the foundation. And that is the definition under Minnesota jurisprudence of a total loss. If nothing is standing above the ground, it's a total. Are you talking about the second fire? Yes, the second fire. That's why this notion that the second fire was a partial loss is absolutely untrue. Well, wouldn't it be partial in the sense that the first fire destroyed some percentage of it? Again, Your Honor, in order to be a partial loss, there has to be some portion of the house remaining to be reused. There is a long line of Minnesota Supreme Court cases about what constitutes a total loss in a fire situation. And so the second fire, without question, would be deemed a total loss because there was nothing remaining above ground of this house to reuse. That's why the admission that the second fire was a total loss, no one until we get to the sort of dancing around about what we really didn't mean. We said it was a total loss, but we really didn't mean it. We didn't anticipate that, Your Honor, because quite honestly, there was nothing left of this house. Now, as far as the value policy provision goes and this increased risk, how can Farm Bureau say they didn't consent to the increased risk when A, they knew about the damage, they knew the full extent of the damage, they had adjusters, et cetera, climbing all over this place. And they reserved for themselves in the policy the right to change coverage, to reduce the limits, to make insurability determinations, and they chose not to. Now, there is nothing there that says that's how insurance companies consent. They issue coverage. The second thing is that there is clearly damage to the house, but there was no evidence at all, no underwriter, nothing from Farm Bureau that says there was an increased risk. Instead, when they got pushed on the fact that there was no evidence, they asked the court to take judicial notice. This is a case that's not close. The court should be affirmed. Thank you. Thank you, Mr. Lloyd. Mr. Warner, your rebuttal.  And, Your Honor, just kind of tacking on the question you were asking, I'm going to suggest an absurd hypothetical. By the Shaw's Lights, if you had a first loss, and that first loss resulted in destruction of the home except for one 2x4 standing, one stud, that's a part of the property above ground that's capably being reused in a repair. So it's not a total loss. One 2x4 is left. Then you have, say, a windstorm back up. They've been paid for the first loss. Then you have a windstorm that topples over the one 2x4 that's left standing. Now, according to them, that's a second loss, and that constitutes a total loss for which an entire additional full policy limit must be paid. The point is, at the time of the second loss, this was only a partial building. Ipso facto, I would argue, it could not have been by itself a total loss. A couple other points. Allowing windfall recoveries. I think what he argued, and you correct me if I'm wrong, is that one 2x4 is not going to get you there. It's got to be a useful home in some sense. Well, that's the way I understood his argument. Maybe I'm misunderstanding it. I would submit to you, Your Honor, that under the total loss jurisprudence in Minnesota, it's any portion of the building standing above ground that's capable of being reused. If it's capable of being reused. So if you've got a standing 2x4, you can reuse it. It's not a total loss. Is there a universe in which a single standing 2x4 would be adjusted as something less than a total loss? I doubt it, Your Honor. Right. But your company adjusted something and said the thing that's still there is worth something, and it's worth repairing. Right. And so if there are two separate occurrences, and the second one is, in fact, by any definition, a total loss, then you have the opportunity to go in and say, well, there's been a partial loss, and until repaired, it's still a partial structure and could have reduced coverage. You didn't choose to do that. Why is that risk not on the insurance company? Because after all, they're the people drafting the policy and doing the underwriting. Well, the risk is on the insurance company, and the Farm Bureau paid the remainder of the loss. They receive full value. I would submit that. I think the question, though, is why shouldn't the burden be on you to go in and say the total loss value is now less? Reducing the policy or canceling the policy, I would submit, is bad public policy for a couple of reasons. First, accidental direct physical loss. There's no reason for Farm Bureau to reduce the limit because coverage still, I would submit, depends on proof that you have physical damage in a certain amount. And in our situation, you have a partial building that was physically damaged. It wasn't the whole building. Therefore, it couldn't have been a total loss. No reason to reduce the limit. Yeah, except your policy says when there's a total loss, we'll pay the max. And the combination of the two losses constitute a total loss. But take canceling the policy. I mean, homeowners' policies ensure more than just a building. They provide liability coverage. They provide property coverage. So if you're talking about canceling a policy after a partial loss, the insurer is being left without coverage. I don't think we're talking necessarily about cancel. I think what we're saying is until you repair, the new max is minus Y. And as I pointed out, Your Honor, if construction is started, that's absolutely addressed in the policy. We say construction was started. The district court said no. In that circumstance, you get paid ACV. And that's what happened here, in a sense, because ACV constituted the remainder. But that issue is not before us on appeal, right? The construction provision? That issue is not before you on appeal. Okay. Thank you very much. Thank you. Another interesting case. A case will be submitted and decided in due course. We appreciate your appearance today and your arguments.